United States District Court
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT S. SNYDER,<br><br>Plaintiff(s)<br><br>v.<br><br>SERAFINA COLLURA, Individually and As City Councilor for the City of Waltham; RALPH E. GAUDET, Individually and As Superintendent of Public Buildings of the City of Waltham; PATRICK POWELL, Individually and as Senior Building Inspector for the City of Waltham; BERNADETTE SEWELL, Individually and as Assistant City Solicitor for the City of Waltham; JEANNETTE A. McCARTHY, Individually and as Mayor of the City of Waltham; and the CITY OF WALTHAM,<br><br>Defendant(s) | C.A. No.<br><br>**COMPLAINT**<br><br>**AND**<br><br>**JURY DEMAND** |

## INTRODUCTION

(1)     The plaintiff Robert S. Snyder ("Snyder") brings this complaint pursuant to 42 U.S.C. §§ 1983, 1985, 1986 against all of the above-named defendants who, by acting in their capacity as officials of the City of Waltham, conspired in bad faith under color of law to deprive the plaintiff of rights, privileges, or immunities, including, but not limited to, the plaintiff's rights to equal protection and substantive due process as secured by the United States Constitution. The complaint also asserts state law claims against each of the defendants for abuse of process, malicious prosecution, civil conspiracy, and violation of the Massachusetts Civil Rights Act. The complaint seeks compensatory and punitive damages, plus reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**JURISDICTION AND VENUE**

(2) The claims asserted in Count I arise under the Constitution or laws of the United States, and therefore jurisdiction is proper pursuant to 28 U.S.C. §1331 without regard to the amount in controversy. Jurisdiction is also proper under 28 U.S.C. § 1343(3).

(3) Counts II through V allege against each of the defendants claims for abuse of process, malicious prosecution, civil conspiracy, and violations of the Massachusetts Civil Rights Act, all of which claims are based on state law and arise from the same nucleus of operative facts and "form part of the same case or controversy" as the claims asserted in Count I. This court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a).

(4) All defendants reside in the District of Massachusetts, and venue is proper under 28 U.S.C. § 1391(b).

**PARTIES**

(5) The plaintiff Robert S. Snyder ("Snyder") is an individual residing in Newtonville, Massachusetts, and owner of the property located at 57 Grant Street, Waltham, MA 02451 ("57 Grant"). Snyder is the owner of Engineered Tooling Corp. ("ETCO"), a duly organized Massachusetts corporation with a principal place of business at 57 Grant St., Waltham, MA 02451.

(6) The City of Waltham ("Waltham") is a municipality situated in the western suburbs of Boston, Massachusetts; originally founded in 1636, it was incorporated as a city in 1884. The primary legislative and policy-making body of Waltham consists of a city council comprised of 15 members, six of whom are elected at large (citywide) and nine of whom are elected by ward. The mayor of Waltham is the city's chief executive officer.

(7)     The defendant Serafina "Sally" Collura ("Collura") is an individual who at all relevant times served as a councilor-at-large for the City of Waltham; she also resides in the City of Waltham.

(8)     The defendant Ralph Gaudet ("Gaudet") is an individual who at all relevant times served as the superintendent of buildings for the City of Waltham Building Department.  The Building Department is the municipal agency responsible for issuing building permits and enforcing the local zoning ordinances of Waltham.

(9)     The defendant Patrick Powell ("Powell") is an individual who at all relevant times served as the senior building inspector and zoning enforcement officer for the City of Waltham Building Department.

(10)    The defendant Bernadette Sewell ("Sewell") is an individual who at all relevant times served as an assistant city solicitor for the City of Waltham.

(11)    The defendant Jeannette A. McCarthy ("McCarthy") is an individual who at all relevant times served as the mayor of the City of Waltham.

## **FACTS**

(12)    The plaintiff's 57 Grant St. property comprises approximately 0.113 acres of land on which is situated a single building originally built in 1870.

(13)    On March 30, 1967, the Waltham Zoning Board of Appeals issued a decision in Case No. 67-5 permitting the 57 Grant property's then owner to convert the building, which was "located in a Residence C District" from a single-family residence "into three professional offices." Exhibit 1: Variance 67-5.

(14)    In 1967, the zoning ordinances of Waltham permitted within a Residence C District any "use which is permitted in any residence A or residence B district."  Waltham

3

General Ordinances, § 21-18 (1964).  Residence A-1 and A-2 districts in 1967 permitted buildings used for "offices of physicians, surgeons or dentists; provided, that there are no overnight hospital facilities in connection therewith, and offices of architects, engineers, lawyers, tutors or like professional persons."  Waltham General Ordinances, § 21-12(7) (1964).

(15)     Snyder has owned the 57 Grant property since 1997.

(16)     At all relevant times, Snyder has used the first floor of the 57 Grant property as an office for ETCO, a specialized engineering company which sells to customers small custom made carbide inserts for tools used to manufacture medical and other specialized equipment.

(17)     The only other offices on the 57 Grant property at all relevant times have been an office used by a fully licensed masseuse/registered nurse and an office used by an individual providing primarily paralegal services.

(18)     For a number of years prior to August 13, 2006, the defendant Waltham City Councilor Collura worked at the 57 Grant property as an at-will employee of Snyder and ETCO.

(19)     On about August 15, 2006, Snyder and ETCO terminated Collura from their employ.

(20)     Subsequent to Collura's termination, Snyder discovered that Collura had been using ETCO time and resources for her own personal endeavors, including business related to her work for the City of Waltham, her TV show, her personal store "The Tea Leaf" and business unrelated to ETCO, and other improper purposes.  Collura had also purchased merchandise for her store, The Tea Leaf, using ETCO 's federal tax ID number and shipped merchandise using Snyder's UPS (United Parcel Service) account, all without Snyder's consent or knowledge.

(21)     On or about August 15, 2006, the same day she was terminated, Collura applied for unemployment insurance benefits as a result of her termination by Snyder and ETCO. Exhibit 2: DUA Request 8/16/2006.

(22)     In connection with Collura's application for unemployment benefits, Massachusetts Division of Unemployment Assistance requested from ETCO information about why Collura was discharged. Exhibit 2: DUA Request 8/16/2006.

(23)     As a result of the circumstances surrounding her termination, the Division of Unemployment Assistance denied unemployment benefits to Collura.

(24)     In retaliation for her termination of employment by Snyder and ETCO, Collura embarked upon a multi-year campaign, acting in concert with the other defendants, to use their positions of authority and influence as officials of the City of Waltham to harass, abuse, and retaliate against Snyder by, *inter alia*, instigating civil and/or criminal complaints to be issued against Snyder by the Waltham Building Department and zoning authorities without any probable cause and, in fact, without any legitimate purpose.

(25)     Collura's malicious and retaliatory campaign started on August 15, 2006, the date of the termination of her employment, by contacting the Waltham Building Department's zoning authorities and prodding an unjustified initiation of inquiries about Snyder's 57 Grant property.  A "Special Investigation" sheet in the records of the Building Department indicates that on August 15, 2006 a complaint was made about Snyder's 57 Grant property – "There are people living in the office, no kitchen or bathing.  No permits – cable – mail" – and indicating that the caller was "Sally Collura." Exhibit 3: Special Investigation Sheet 8/16/2006.

(26)     As part of her retaliatory scheme, Collura discussed her complaints about the 57 Grant property with at least one of her fellow city councilors who approved and concurred in carrying out her plan as it concerned the 57 Grant property. <u>Exhibit 4: Collura Email 11/9/2006.</u>

(27)     As a direct result of Collura's retaliatory complaints with the Waltham authorities, the Building Department and city authorities investigated Snyder and the use of the 57 Grant property.

(28)     However, it was more than six months after initial and continual prodding and pushing by Collura that Powell physically inspected the plaintiff's 57 Grant property on February 7 and February 26, 2007.  Powell found no violations on the premises.

(29)     On June 27, 2007, more than four months after the original inspections , Powell sent Snyder a letter falsely alleging, "the premises are being used in a manner different from the Zoning Board of Appeals allowed use granted in Case No. 67-5.  You must therefore ***Cease and Desist*** the use of the property as it is currently being used (use is not considered professional offices) within 30 days of receiving this notice or show evidence that you will be applying to the Board of Appeals to modify the prior variance to accommodate the present use."  The letter also threatened, "Failure to comply with this notice will result in noncriminal ticketing disposition being instituted.  The fines are $50 the first day, $200 the second day and $300 each and every day the violation remains."  <u>Exhibit 5: Powell Letter 6/27/2007.</u>

(30)     In fact, at the time he wrote the cease-and-desist letter on about June 27, 2007, Powell knew that no violations existed on the premises at the 57 Grant property.

(31)     The Waltham Building Department file for the 57 Grant property contains a document showing that as early as November 28, 1984, the then building inspector Walter Ohenumus had written a letter stating, "The variance… in Case No. 67-5 dated March 30, 1967

… permits use of the premises at 57 Grant Street for either three professional offices or two professional offices and one apartment, provided that four off-street parking spaces are located upon said premises." <u>Exhibit 6: Ohnemus Letter 11/28/1984.</u>

(32)     In addition, in a letter from the defendant Ralph Gaudet dated May 17, 1994, the Waltham Building Department cited and adopted the opinion of Inspector Ohnemus regarding the permissible uses of the 57 Grant property<u>. Exhibit 7:</u> <u>Gaudet Letter 5/17/1994.</u>

(33)     Powell's bad faith prosecution of Snyder, without any legal basis or authority, in conjunction with Collura is proven by the fact that on May 24 and June 5, 2007 Powell received e-mails from the Waltham assistant city solicitor Sewell in which Sewell requested that Powell confirm his oral communication to Sewell that there were no violations existing on the premises at 57 Grant St.

(34)     As a result of Powell's knowingly false statement that it would be necessary to apply to the board of appeals to modify 57 Grant property's variance in order to accommodate its existing use, Snyder was compelled to retain counsel for the purpose of seeking relief from the Waltham Zoning Board of Appeals, or otherwise face prosecution by the Waltham Building Department for the alleged zoning violations.

(35)     Powell and Collura, with the approval and knowledge of the other defendants embarked upon a campaign the sole purpose of which was to abuse, harass, and destroy Snyder in any way they could, and their primary means of doing so was initiating civil or criminal zoning enforcement complaints against Snyder.

(36)     As a result of the defendants' machinations against him, Snyder was forced to incur substantial expense in retaining legal counsel to pursue a useless and futile proceeding before the Waltham Zoning Board of Appeals in order to try and modify a zoning variance which

7

was completely unnecessary.  Snyder also suffered severe anguish and emotional distress directly caused by the defendants' actions.

(37)     On about July 17, 2007, Collura filed a complaint with the Waltham Police Department alleging apparently "suspicious activity" near her store, The Tea Leaf, at 487 Moody St., Waltham for no other reason than that she was "nervous" because "she observed Mr. Robert Snyder her employer that she used to work for,... walking in the crosswalk near the store entrance."  The narrative in the police Incident Report concludes, "At this time there's no further action needed for the situation." Exhibit 8: Police Incident Report 7/17/2007.

(38)     Prior to August 2006, the Waltham Police Department had never visited Snyder's 57 Grant property for any reason.  After Snyder's termination of Collura, Snyder received at least five visits at the 57 Grant property from the Waltham Police Department.

(39)     In July 2007, Snyder approached Waltham Mayor Jeannette McCarthy and communicated his concerns to her about Collura's retaliatory scheme against him by giving her a written memorandum entitled "Issues of Fact Involving Councilor Collura," in which Snyder outlined the history of the relationship between him and Collura, describing in detail the circumstances surrounding her termination of employment by Snyder, and Collura's course of conduct and actions after her employment termination, including but not limited to Collura's false suggestion to the Waltham Police Department that Snyder was stalking her; the suspiciously timed notices of violations of zoning ordinances from the Waltham Building Department; Collura's statements to Snyder's wife accusing Snyder of marital infidelity; etc. Exhibit 9: Issues of Fact Involving Councilor Collura 7/30/2007.

(40)     Mayor  McCarthy's only response was that she needed Collura's vote on the council and that, although she sympathized with the plaintiff's travails, she would  not interfere

8

in any way with Collura's actions other than to forward Snyder's memorandum to the Waltham Law Department.

(41) At Collura's instigation, on November 30, 2007, well over a year after Collura's initial complaint to the Building Department, the Waltham Building Department, through Powell, issued to Snyder a "Notice of Violation of City Ordinance or Regulation," No. 01815. Exhibit 10: Notice of Violation 11/30/2007.

(42) In connection with the violation notice dated 11/30/2007, on December 7, 2007 the Building Department of Waltham submitted an application for a complaint against Snyder in the Waltham District Court.

(43) A hearing before a clerk of the Waltham District Court took place on January 16, 2008. In light of Snyder's counsel's representation that Snyder would be filing a petition with the Waltham Zoning Board of Appeals to cure any violations which may exist, the proceeding was continued.

(44) On about February 11, 2008, in an initially unrelated collateral matter, Snyder filed a small claims complaint in the Newton District Court against Frank Collura, brother of the defendant Serafina Collura. At the small claims trial on May 21, 2008, the defendant Serafina Collura appeared as a witness on behalf of her brother. The Newton District Court on May 22, 2008, entered a judgment in the amount of $1,383.17 in favor of Snyder and against Frank Collura in the small claims action. Exhibit 11: Judgment 5/22/2008.

(45) On May 21, 2008, the very same day Snyder prevailed in the small claims action against Frank Collura, Serafina Collura caused the Waltham Building Department to issue a second "Notice of Violation of City Ordinance or Regulation," No. 02407 against Snyder; the notice fined Snyder $200 for the alleged offense. Exhibit 12: Notice of Violation 5/21/2008.

9

(46) On May 22, 2008, the Waltham Building Department issued yet a third "Notice of Violation of City Ordinance or Regulation," No. 02408, against Snyder. The offense alleged in this notice was a "Zoning Board of Appeals conditions violation case #67-5." The notice further indicated that Snyder would be fined "$300 each and every day till abated." Exhibit 13: Notice of Violation 5/22/2008.

(47) On July 21, 2008, as part of her continuing pursuit of Snyder, Collura requested from the Building Department all inspection reports and decisions related to the 57 Grant property.

(48) On about July 22, 2008, the defendant Gaudet, superintendent of buildings for the City of Waltham, transmitted to Collura the Building Department's file related to the 57 Grant property.

(49) On September 9, 2008, Snyder's petition for modification of a zoning variance, which Powell had effectively ordered Snyder to commence or otherwise face prosecution for zoning code violations, was heard by the Waltham Zoning Board of Appeals. The Board recommended that Snyder withdraw the petition without prejudice, which he did. The petition was unnecessary to begin with. Exhibit 14: ZBA Decision 9/9/2008.

(50) On September 10, 2008 a hearing before the clerk magistrate of the Waltham District Court in the matter of the alleged zoning violations on Snyder's 57 Grant property was scheduled. The hearing was continued till October 1, 2008 in order to allow Snyder to retain successor counsel.

(51) On October 1, 2008, a hearing took place before the clerk-magistrate at which Snyder's successor counsel, Edward J. Lonergan, and the defendant Powell were present. At the

hearing, the clerk as a courtesy continued the hearing to another date in order to allow the defendant assistant city solicitor Sewell to be present and address the alleged violations.

(52)    On November 6, 2008 another hearing before the clerk-magistrate took place with assistant city solicitor Sewell and Snyder's counsel, Attorney Lonergan, present.  At the hearing the clerk magistrate advised Sewell that the applications for complaints in connection with the notices of violations would be dismissed.

(53)    On or about December 4, 2008, the court denied or dismissed all complaints and violation notices from the Waltham Building Department against Snyder. <u>Exhibit 15: Dismissal.</u>

## **COUNT I**
## **42 U.S.C. §§ 1983, 1985, 1986**

(54)    The plaintiff incorporates and realleges all preceding paragraphs.

(55)    As its city councilors and/or employees of Waltham, Collura's and the other defendants' acts and omissions described in this complaint were carried out in their official capacity and under color of the rules, regulations, ordinances, statutes, policies, customs, or usage of the City of Waltham.

(56)    Among Snyder's federal constitutional rights and liberties which the defendants' violated are the right to equal protection of law and substantive due process under the 14th Amendment of the United States Constitution, including but not limited to Snyder's right to freedom from false accusations, freedom from abuse of process and malicious prosecution, and freedom from coercion and intimidation.

(57)    All the defendants had actual knowledge of the circumstances surrounding the termination of the defendant Collura's employment by Snyder and ETCO.

(58) All the defendants knew, or at least learned at some point, that no zoning ordinance violations existed on the 57 Grant property, and that they were participating and acting in their official capacities in concert with Collura solely for the purpose of carrying out Collura's retaliatory and vindictive campaign against Snyder, without any legitimate purpose, and that their actions were devoid of any factual support or any arguable basis in law.

(59) All the defendants, although they had power to prevent or aid in preventing the violation of Snyder's rights secured by the laws and Constitution, neglected and refused to prevent or aid in preventing such violations.

(60) The defendants conspired together and intentionally treated Snyder differently from others similarly situated without any rational basis, and such treatment was in fact motivated solely by Collura's personal hostility toward Snyder and her malicious plan to harass, abuse, and injure Snyder.

(61) All the defendants either actively or through their passive acquiescence at various times singled out Snyder for selective prosecution under the city's ordinances and other laws without any probable cause, and without any factual or legal basis, for believing that Snyder was in violation of any laws or ordinances. Such actions and prosecutions denied Snyder the right to equal protection of the law.

(62) The City of Waltham through its employees, including its Building Department and other departments, participated in Collura's retaliatory campaign against Snyder by failing to conduct proper investigations of the Snyder's allegations and by instituting against Snyder civil and/or criminal proceedings without any good faith legal or factual basis and without probable cause.

(63)   As a direct result of the defendants' actions under color law, Snyder has suffered damages including but not limited to monetary damages, mental anguish, and emotional distress.

(64)   The City of Waltham has taken no disciplinary action against Collura, or those acting in concert with her, for their conspiracy to violate Snyder's state and federal constitutional rights and has countenanced these abusive acts and policies.

WHEREFORE, the plaintiff prays that the court award him:

1. Judgment against each individual defendant found liable and against the City of Waltham for damages in the amount of $200,000;

2. Punitive damages against each individual defendant bound liable in the amount of $600,000;

3. Interest, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

4. All other relief which the court deems equitable and just.

## COUNT II
### Abuse of Process

(65)   The plaintiff incorporates and realleges all preceding paragraphs.

(66)   Collura and the other defendants instigated civil and/or criminal proceedings against Snyder for the purpose of carrying out Collura's personal vendetta against Snyder, and not for any lawful purpose.

(67)   The defendants' use of legal process against Snyder for an ulterior and illegitimate purpose caused Snyder to incur damages including but not limited to monetary damages, mental anguish, and emotional distress.

WHEREFORE, the plaintiff prays that the court grant him a judgment against each defendant in the amount of $200,000 for compensatory damages, plus interest, costs, and all other relief which the court deems just and equitable.

## COUNT III
### Malicious Prosecution

(68)   The plaintiff incorporates and realleges all preceding paragraphs.

(69)   The defendants maliciously and without probable cause instituted civil or criminal proceedings against Snyder.

(70)   The civil or criminal proceedings which the defendants instituted all terminated in favor of the plaintiff Snyder.

(71)   The defendants' actions in maliciously and without probable cause instituting such civil or criminal proceedings against Snyder have caused Snyder to incur damages including but not limited to monetary damages, mental anguish, and emotional distress.

WHEREFORE, the plaintiff prays that the court grant him a judgment against each defendant in the amount of $200,000 for compensatory damages, plus interest, costs, and all other relief which the court deems just and equitable.

## COUNT IV
### Civil Conspiracy

(72)   The plaintiff incorporates and realleges all preceding paragraphs.

(73)   The defendants, knowing that their actions were tortious and designed to harm Snyder, aided, abetted, and acted in concert with Collura and with each other in their abuse of process and malicious prosecution of Snyder.

(74)   The defendants' actions constitute a civil conspiracy to harass, abuse, and injure Snyder.

(75)   As a result of such civil conspiracy to commit tortious conduct, Snyder has suffered damages including but not limited to monetary damages, mental anguish, and emotional distress.

WHEREFORE, the plaintiff prays that the court grant him a judgment against each defendant in the amount of $200,000 for compensatory damages, plus interest, costs, and all other relief which the court deems just and equitable.

### COUNT V
### Massachusetts Civil Rights Act, G.L. c. 12, §§ 11H, 11I

(76)     The plaintiff incorporates and realleges all preceding paragraphs.

(77)     The defendants' actions constitute threats, intimidation, and coercion. The defendants individually and in a joint conspiracy attempted to and actually interfered with Snyder's exercise and enjoyment of rights and liberties secured by the Constitution and laws of the United States, and the Constitution and laws of the Commonwealth of Massachusetts, entitling the plaintiff to relief under G.L. c. 12, §§ 11H, 11I.

(78)     Among Snyder's state and federal constitutional rights and liberties which the defendants' violated are the right to equal protection of law and rights to substantive due process under the 14th Amendment of the United States Constitution, including but not limited to Snyder's right to freedom from false accusations and freedom from abuse of process and malicious prosecution, freedom from coercion and intimidation, and right to peaceably enjoy and use his property for his pleasure, comfort, or profit without harassment and unlawful interference.

(79)     All the defendants' actions deprived Snyder of his right to own land and use and enjoy it for his comfort and profit, and the campaign initiated by Collura and continued by her and the other defendants was specifically designed to deprive Snyder of such rights.

(80)    As a result of the defendants' threats, intimidation, and coercion, Snyder has suffered damages including but not limited to monetary damages, mental anguish, and emotional distress.

WHEREFORE, the plaintiff prays that the court grant him a judgment against each defendant in the amount of $200,000 for compensatory damages, plus interest, costs, reasonable attorney's fees, and all other relief which the court deems just and equitable.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

PLAINTIFF
By his Attorney(s),

/s/ Leonard A. Frisoli
Leonard A. Frisoli, Esq. BBO # 638201
laf@frisolilaw.com

Zaheer A. Samee, Esq. BBO #667751
zas@frisolilaw.com

Frisoli Associates, P.C.
43 Thorndike Street
Cambridge, MA 02141
Tel (617) 494-0200

Date: December 2, 2009