UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-12055-RWZ

ROBERT S. SNYDER

v.

SERAFINA COLLURA, *et al.*

ORDER

August 24, 2010

ZOBEL, D.J.

Plaintiff Robert Snyder fired City of Waltham (the "City") councilor-at-large

Serafina Collura from his private employ in 2006.  He alleges that Collura thereafter

entered into a conspiracy with City employees including the Superintendent of

Buildings Ralph Gaudet, Senior Building Inspector Patrick Powell, and Assistant City

Solicitor Bernadette Sewell to cite his property for non-existent zoning violations and

threaten $300 daily fines.  He sues the City and the alleged co-conspirators for denial

of substantive due process and equal protection under 42 U.S.C. §§ 1983, 1985, and

1986 and for abuse of process, malicious prosecution, civil conspiracy, and violation of

the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I.[1]  The

City and all defendants other than Collura move to dismiss the federal claims and either

dismiss or decline jurisdiction over the state law claims.

---

[1]Mayor of Waltham Jeannette McCarthy was named as a defendant in the
complaint but later voluntarily dismissed.  (Docket # 12.)

## I.      Background

In 1997 Snyder purchased a building in the City (the "Property") which was originally a single-family residence but was internally divided in the late 1960s into three separate units.  A prior owner was granted a variance which allowed the building to be occupied by either three professional offices or two professional offices and one apartment.  (Compl. Ex. 1, Docket # 1.)  The first floor office is currently used by plaintiff's engineering company, ETCO, and the other two offices are occupied by a licensed masseuse and a paralegal.

Collura worked as an at-will employee of ETCO until August 15, 2006, when her employment was involuntarily terminated.  Snyder believed she used ETCO resources for various improper purposes.  She sought unemployment benefits but her application was denied after the Division of Unemployment Benefits learned why she had been fired.

On August 15, the same day she was fired, Collura filed a zoning complaint with the City building department stating that individuals were residing in the Property.  On November 9, 2006, she contacted the building department to ask that the department file regarding the Property be shared with the City law department, and she made further inquires regarding the case on July 21, 2008.

The building department, in the person of defendant Powell, inspected the property on February 7, 2007, with a follow-up inspection on February 26.  Powell consulted with Gaudet and, on June 27, sent Snyder a cease and desist letter alleging that the property was being used in violation of the zoning variance.  Snyder contends

that this allegation is false and, in particular, contrary to what Powell earlier told defendant Sewell, the City Solicitor.  (Compl. ¶ 33, Docket # 1.)  Snyder nonetheless asked the zoning board of appeals to modify the variance.

Powell issued a first notice of violation, which carried a $50 fine, on November 30, 2007, and the building department shortly thereafter applied to the Waltham District Court for a complaint against Snyder.  A second notice of violation, with a $200 fine, issued on May 21, 2008, the same day Snyder secured a judgment in small claims court against Frank Collura, the brother of defendant Collura.  On May 22, a third notice of violation issued.  The third notice carried a $300 daily fine.

Both the zoning board of appeals and district court proceedings were ultimately dismissed, the former on September 9, 2008, and the latter on September 10, 2008. The reasons for the dismissals are unclear.  The zoning board notice of decision states that Snyder was granted leave to withdraw without prejudice (Compl. Ex. 14), and the application for a complaint was denied without explanation (Compl. Ex. 15).

## II.    Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The facts must allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  Id.  A simple recitation of elements, or statements of legal conclusion, will not suffice.  Id.

A.      **The §§ 1985 and 1986 Claims**

A claim under § 1985 requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Kush v. Rutledge, 460 U.S. 719, 726 (1983).  Section 1986 claims require, as a predicate, a violation of § 1985.  The complaint does not allege any class-based motive for defendants' conduct, so it fails to state a claim under either statute.

B.      **The City of Waltham**

A municipality is not liable under § 1983 solely because it employs a tortfeasor. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  The tortious conduct must be sufficiently connected to a municipality's official policy such that liability flows from an act of the municipality and not from acts of employees.  Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).  Consistent with that guiding principle, liability may be imposed for a single decision by a municipal official if that official has "final authority to establish municipal policy with respect to the action ordered," id. at 481; Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008) (ruling that a municipality may be liable for a staffing decision by the chief of police), and there is a direct causal link between the official's action and the culpable conduct, Brown, 520 U.S. at 404-06.

Superintendent Gaudet is "vested with the sole jurisdiction and authority to interpret and enforce local zoning."  (Defs.' Mem. of Law 11, Docket # 16 at 16.)  He is alleged to have authorized the investigation of the Property and he admits involvement in the decision to issue the cease and desist letter.  This is sufficient to state a claim for

municipal liability.

### C.    Defendant Sewell

The complaint contains just two factual allegations regarding Sewell.  First, that she asked Powell by email to confirm an earlier statement that there were no zoning violations at the Property, and second that she represented Waltham in a district court hearing in which the zoning violation complaint was dismissed.  These allegations create no inference that Sewell was a participant in the retaliatory scheme.  They do not suggest that she had any involvement with the investigation of the Property or the subsequent false allegations of zoning violations.  The motion to dismiss all claims against Sewell is allowed.

### D.    Defendants Gaudet and Powell

Gaudet and Powell played a more substantive role in the alleged retaliatory plot. The complaint alleges, with supporting exhibits, that Collura pressured Gaudet to investigate the Property, and Gaudet admits in an affidavit (Docket # 16 at 29) that he participated in the decision to send the cease and desist letter.  Powell sent the cease and desist letter and the three notices of violation, the last of which threatened a $300 daily fine.  Their investigation also resulted in the application for a civil complaint against Snyder.  Gaudet and Powell argue that these allegations do not state a substantive due process or equal protection claim.  They also assert that, regardless, they have either absolute or qualified immunity from suit.

### 1.    Due Process and Equal Protection

The use of government process, without lawful justification, to threaten a $300

daily fine in retaliation for a private slight is sufficiently "conscious-shocking" to state a substantive due process violation.  See Mongeau v. City of Marlborough, 492 F.3d 14, 20 (1st Cir. 2007) (identifying bribes or threats as conduct that may constitute a substantive due process violation).  Snyder is not complaining about the denial of a zoning permit; he sought a variance only after Powell sent the cease and desist letter and, he explains in the complaint, he was subsequently informed that no variance was required.  (Compl. ¶ 49.)  Snyder also alleges the predicate requirements of a class-of-one equal protection claim; specifically, that he was treated differently than others similarly situated out of malice and bad faith.  Tapalian v. Tusino, 377 F.3d 1, 5-6 (1st Cir. 2004).  While the factual contentions regarding others similarly situated are scant, the strong inference of personal animus gives the claim sufficient heft to survive a motion to dismiss.

2.    **Immunity**

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.  The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  Burns v. Reed, 500 U.S. 478, 486-87 (1991) (internal citation omitted); see Van de Kamp v. Goldstein, 129 S. Ct. 855, 860-61 (2009) (identifying as functional considerations that prosecutors would be deterred by frequent lawsuits, and qualified immunity would turn on "complex, close, fair-trial questions" of discretion, requiring a "virtual retrial" years after the underlying prosecution).  Gaudet and Powell have not made such a showing.  First, because it is settled law in this circuit that zoning

related disputes, as a general rule, do not support constitutional claims, <u>Mongeau</u>, 492
F.3d at 17, it is unlikely that zoning officials would be deterred by frequent suits.  This
complaint, which contains both factual allegations and exhibits supporting a strong
inference of retaliatory malice from one of the alleged conspirators, is the exception.
More significantly, for the reasons discussed below, these defendants face no
particular difficulty meeting the standard for qualified immunity.

The qualified immunity analysis is a two-part inquiry: (1) do the facts make out a
constitutional violation; (2) was the right clearly established at the time of the violation.
<u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268-69 (1st Cir. 2009).  The second part of the
inquiry has itself two aspects.  The first focuses on the clarity of the law at the time of
the violation and the second on whether a reasonable official would have understood
that the conduct violated the right.  <u>Id.</u> at 269.

Gaudet and Powell may assert a qualified immunity defense by pointing to
evidence that the decision to investigate Snyder and the finding of a zoning violation
would not reasonably be understood to violate Snyder's constitutional rights.  In the
motion to dismiss, however, they rely solely on a conclusory statement that "probable
cause existed" for the investigation and the subsequent civil complaint.  (Defs.' Mem. of
Law 13, Docket # 16 at 18.)  This is insufficient.  Therefore, the motion for qualified
immunity is denied, but without prejudice so that the defense may, if supported by the
evidence, be raised at a later stage of the proceeding.

**E.     State Law Claims**

Defendants' motion to dismiss the state law claims is premised, like the qualified immunity argument, on the existence of probable cause.  That determination turns on the mixed question of law and fact as to whether Snyder was using the building in violation of the zoning variance.  As the facts alleged do not establish probable cause, the motion to dismiss is denied as to these claims.

The alternative motion to decline jurisdiction over the state law claims is denied without prejudice.  The remaining federal claims are intertwined with the state law claims.

## III.   Conclusion

The motion to dismiss the City of Waltham (Docket # 15) is ALLOWED as to §§ 1985 and 1986 claims and DENIED as to the § 1983 and state law claims.  The motion to dismiss the individual defendants (Docket # 16) is ALLOWED as to Sewell, and as to the §§ 1985 and 1986 claims against Gaudet and Powell, and DENIED as to the § 1983 and state law claims against Gaudet and Powell.


        August 24, 2010                              /s/Rya W. Zobel
           DATE                              RYA W. ZOBEL
                                      UNITED STATES DISTRICT JUDGE