UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Robert S. Snyder | : | |
| Plaintiff, | : | |
| | : | C.A. No. 1:09-cv-12055-RWZ |
| v. | : | |
| Serafina Collura, Individually and as | : | |
| City Councilor for the City of Waltham; | : | |
| Ralph E. Gaudet, Individually and as | : | |
| Superintendent of Public Buildings of the | : | |
| City of Waltham of Waltham; Patrick Powell, | : | |
| Individually and as Senior Building Inspector | : | |
| for the City of Waltham; and The City of Waltham, | : | |
| Defendant(s). | : | |
| | : | |

## DEFENDANTS RALPH GAUDET AND PATRICK POWELL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The defendants, Ralph Gaudet (Gaudet) and Patrick Powell (Powell) submit this

Memorandum of Law in support of their motion for summary judgment in the above-captioned case

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. None of the federal claims against

Gaudet or Powell can survive summary judgment because the plaintiff cannot show that the

defendants violated any federally-protected right, an essential element in a § 1983 action, the only

remaining federal based claim in the plaintiff's Complaint. Moreover, even if such a right were

established, Gaudet and Powell are entitled to absolute and/or qualified immunity as to any claim.

The plaintiff's Complaint alleges that he was the victim of malicious prosecution, abuse of

process, and a conspiracy to violate his civil and equal protection rights when the City issued,

pursuant to G.L. c. 40, § 21D, three non-criminal disposition tickets to him for certain

zoning/building code violations occurring at his property located at 57 Grant Street in Waltham.

These claims are legally insufficient in the First Circuit to support a § 1983 claim and in the absence

of another constitutional right with which to bootstrap § 1983, cannot withstand an absolute or

qualified immunity defense by Gaudet and Powell. As such, summary judgment must enter in favor

of the defendants on all of the federal claims.

1

In addition to this memorandum, Gaudet and Powell adopt, in their entirety, the arguments and requests for relief set forth in the City of Waltham's Motion for Summary Judgment and accompanying memorandum and attachments.

<u>ARGUMENT</u>

## I.    SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted if, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor, the summary judgment record shows that:  (1) there is no genuine dispute as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a).  "A genuine dispute is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case" under the governing law.  *Vera v. McHugh,* 622 F.3d 17, 26 (1st Cir. 2010) (quoting *Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004)). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Borges ex rel. S.M.B.W. v. Serrano–Isern,* 605 F.3d 1, 4–5 (1st Cir. 2010).

"Although we give the nonmoving party the benefit of all reasonable inferences, a party cannot rest on conclusory allegations, improbable inferences, or unsupported speculation to defeat a motion for summary judgment." *Welch v. Ciampa,* 542 F.3d 927, 935 (1st Cir.2008) (internal quotation marks omitted).  *See also Scott v. Harris,* 550 U.S. 372, 380 (2007); *Martínez-Rodríguez v. Guevara,* 597 F. 3d. 414, 419 (1st Cir. 2010); *Meuser v. Federal Express Corp.,* 564 F.3d 507, 515 (1st Cir. 2009); *S.E.C. v. Ficken,* 546 F. 3d 45, 51 (1st Cir. 2008).

Notably, "the non-moving party must put forth specific facts to support the conclusion that a triable issue subsists" in order to overcome a motion for summary judgment. *Vega-Colón v. Wyeth Pharm.,* 625 F.3d 22, 25 (1st Cir. 2010) (quoting *Martínez-Rodríguez,* 597 F.3d at 419 ). This requires the non-moving party to "present definite, competent evidence to rebut the motion." *Id.* "If the nonmovant fails to make this showing, then summary judgment is appropriate." *Borges ex rel. S.M.B.W.,* 605 F.3d at 5 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  Here, the remaining unresolved disputes are primarily legal, rather than factual in nature.

## I.   GAUDET AND POWELL ARE ENTITLED TO ABSOLUTE OR QUALIFIED IMMUNITY ON THE PLAINTIFF'S CLAIMS.

The City's Memorandum in support of its Motion for Summary Judgment provides ample evidence for the collective defendants' position that the plaintiff's §1983 claim cannot survive where it is unsupported by evidence of the existence of a distinct viable federal right and that the defendants violated such right. *See*, City's Memorandum of Law in Support of Motion for Summary Judgment. The absence of such a constitutional right is equally fatal to the plaintiff's ability to withstand Gaudet and Powell's assertion of an absolute or qualified immunity defense.

### A.   Absolute Immunity

In *Butz v. Economou,* 438 U.S. 478 (1978), the hallmark Supreme Court case extending absolute immunity for acts of public officials in the exercise of their official duties akin to that granted to prosecutors, the Court explained: "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515. *Accord Malachowski v. City of Keene,* 787 F. 2d 704, 712 (1st Cir. 1986). "The reasoning of *Butz* applies not only to federal agency officials, but also to local executive officers." *See Spear,* 954 F.2d at 66. For example, in *Willner v. Town of North Hempstead,* 977 F. Supp. 182, the claims against town building inspectors arose from the authorization, initiation and continuation of a criminal information against the plaintiff for zoning and building violations. The *Willner* Court ruled that the defendant building inspectors were acting in their judicial capacity in prosecuting the plaintiff such that they were immune in their individual and official capacities. *See id.* at 192. Using *Butz* and the line of cases detailing absolute prosecutorial immunity, the *Willner* Court concluded that the building commissioner defendants were absolutely immune from the plaintiff's claims of abuse of process and malicious prosecution.

Gaudet and Powell's enforcement, including issuance of citations, of an alleged zoning/building code violation at 57 Grant Street and Powell's presentation of evidence in the M.G.L. c. 40, § 21D noncriminal hearings (civil proceedings) held before the Waltham District Court Clerk Magistrate is analogous to the function of a prosecutor deciding whether to initiate or move forward with a criminal prosecution. Thus, Gaudet and Powell should be able to claim absolute immunity with respect to such acts.

In this same vein, the public policy considerations justifying absolute immunity (and conferring complete protection from civil suits) for prosecutors is equally applicable to the prosecution of zoning violations. The Court has notably opined that "concern that harassment by unfounded litigation" could both "cause a deflection of the prosecutor's energies from his public duties" and also lead the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust," justifies the protection conferred by absolute immunity. *Van de Kamp v. Goldstein,* 129 S. Ct. 855, 859-864 (2009) (quoting *Imbler* at 423). The Court explained further that where §1983 actions are at issue, "both sets of concerns are present and serious." *Id.* Indeed, the "public trust of the prosecutor's office would suffer" were the prosecutor worried about being sued "when making prosecutorial decisions – as he might well were he subject to §1983 liability." *Id.* (quoting *Imbler* at 424-425. "[A]bsolute immunity for this function serves the policy of protecting the judicial process [from vexatious litigation that might have an untoward effect on the independence of the prosecutor]." *Burns v. Reed,* 500 U.S. 478, 492 (1991). Here, the effect of vexatious litigation could and has impeded the fair, efficient administration of local zoning laws.

The summary judgment record evidences that the plaintiff strategically commenced this lawsuit against the City of Waltham and its employees in both their official and personal capacities (as opposed to just bringing suit against his former employee Collura in her individual capacity) for the ulterior purpose of chilling the City's legitimate enforcement of certain zoning violations

occurring at 57 Grant Street.[1] In the instant case, after receiving the June 27, 2007 cease and desist

order, the plaintiff did not appeal Powell's factual determination that 57 Grant Street's use was in

violation of the controlling variance to the ZBA, but, instead, filed and withdrew a petition

requesting a use variance.   The thirty day time period for appeal under G.L. c. 40A, §§ 8, 14, and 15

for the zoning violations with the ZBA expired on July 27, 2008, so the plaintiff failed to properly

preserve his administrative remedies.[2]  Accordingly, the plaintiff is foreclosed from challenging the

validity of the cease and desist order in any declaratory action, including raising any defense or

argument regarding the interpretation of "professional offices" or whether the various businesses of

roofing, building contractor, paralegal, masseuse, and operation of a for-profit storage and

distribution of metal screws operating from 57 Grant Street satisfy this definition in Court. *See id.*

The plaintiff's attempt to sidestep the 30-day jurisdictional filing requirement of G.L. c. 40A, §§ 8

and 15 crafted by the State Legislature by offensively filing this lawsuit appears to be designed to

impede the fair, efficient administration of local zoning laws.[3]

---

[1] Indeed, the collective defendants' position is that the plaintiff's use of the subject property remains out of compliance with a 1967 variance granted by the Zoning Board of Appeals to a predecessor in title, including a blatant continued use of the property as a residence by Leon Shabott.

[2] Principles of exhaustion require a party aggrieved by action of a local zoning administrator (the building inspector in most municipalities) to exhaust all available administrative remedies, bypassing an available remedy divests the reviewing court of jurisdiction. *See, Cumberland Farms, Inc. v. Zoning Board of Appeals of Walpole,* 61 Mass. App. Ct. 124, 129 (2004), (Court precluded CFI from challenging validity of cease and desist order or requirement of special permit in Land Court because did not first appeal building inspector's order, but instead filed applications for special permits). The Court held: "[t]he failure to exhaust administrative remedies is jurisdictional in nature, and the court may not hear the matter if it was not [properly] appealed to the local board of appeals." *Id. See also Bonfatti v. Zoning Bd. of Appeals of Holliston,* 48 Mass. App. Ct. 46, 50 (1999) ("Having failed to take a timely appeal from the [planning] board's action in granting the special permit with conditions, . . . the plaintiff did not have the right to challenge the validity of . . . the condition in a proceeding which, regardless of its form, was the equivalent to an appeal"); *Balcam v. Town of Hingham,* 41 Mass. App. Ct. 260, 263 (1996) (property owners waived right to seek judicial review of denial of occupancy permit by failure to appeal to municipal zoning board of appeals. The plaintiff's inaction below thus precludes judicial review of any of these issues.

[3] Notably, a prevailing defendant in a civil rights suit may recover attorneys' fees if it can be shown that the plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after [they] clearly became so." *Foster v. Mydas Associates, Inc.,* 943 F.2d 139, 145-46 (1st Cir. 1991) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978)).  In cases considered to be frivolous or a waste of judicial time, awarding attorneys' fees discourages future abuses of the civil rights statutes and serves to free up judicial resources for worthier actions. *Foster,* 943 F.2d at 146. For example, in *Fidelity Guarantee Mortgage Corp. v. Reben,* 809 F.2d 931 (1st Cir. 1987), the First Circuit upheld an award for attorneys' fees to a prevailing defendant. There, the court concluded that the plaintiff had continued to litigate his claims after "it became clear that the claims were baseless." *Fidelity,* 809 F.2d at 935. Applying the *Christiansburg* standard, the court in *Fidelity* held that an award for attorneys' fees is justified if the civil rights claim is unreasonable even though no subjective bad faith exists. *Id.* Similarly, the district court awarded attorneys' fees to a

That the plaintiff contemplated a deliberate strategy to chill the City's enforcement action against him in 2006 and continuing to date is evidenced by the fact that, once the plaintiff hired successive counsel, Edward Lonegran, following the unsuccessful ZBA hearing of September 9, 2008, billing records indicate that Attorney Lonegran, even before he had contacted opposing counsel or appeared in court, engaged in a series of conferences with the plaintiff's current attorney in this civil rights matter. Invoice of Service from Edward Lonegran, Esq. to Robert Snyder dated October 2, 2008, attached as Exhibit FF.

Based on the foregoing, Gaudet and Powell ask that the Court rule that they are entitled to absolute immunity from the plaintiff's claims and, as such, award them summary judgment.

## B.    Qualified Immunity

As noted in the Court's August 24, 2010 decision on the parties' Motion to Dismiss, the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise on their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991); *Van de Kamp v. Goldstein*, 129 S.Ct. 855, 860-861 (2009).[4] Qualified immunity limits exposure of public officials to damages actions to "foster effective performance of discretionary functions in the public sector." *Pagan v. Calderon*, 448 F.3d 16, 31 (1st Cir. 2006); *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It is designed to protect all "but the plainly incompetent [and] those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine if it applies, Courts must negotiate a three step analysis: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional violation was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Limone v. Condon*, 372, F.3d 39, 44 (1st Cir. 2004). The plaintiff cannot clear even the first hurdle in this algorithm.

---

prevailing defendant when it found the plaintiff's claim barred by recent precedent, *Carter v. Rollins Cablevision of Massachusetts, Inc.*, 634 F. Supp. 944, 945 (D. Mass. 1986). In *Carter*, the plaintiff pursued a claim under § 1983 involving a local land use dispute despite recent First Circuit precedent barring such actions. *Id.* The court found the plaintiff's claim to be frivolous and groundless given the clear prior treatment of the law underlying the claim. *Id.*

Section 1983 imposes liability on officials who, acting under state law, violate the constitutional rights of private parties. *Pagan*, 448 F.3d at 31. It is merely a procedural mechanism, however, for enforcing those rights, and does not, in and of itself, create any substantive rights. *Id.* Thus, the plaintiff must articulate a right separate from the § 1983 claim. As discussed and analyzed by the City in its Memorandum, this the plaintiff cannot do. The First Circuit does not recognize § 1983 claims based upon malicious prosecution, abuse of process or conspiracy to commit same, the only articulated claims asserted by the plaintiff. While the plaintiff's Complaint somewhat baldly asserts substantive due process and equal protection claims, which could support a § 1983 claim if valid, the facts which might support such claims in this case can only be read within the framework of malicious prosecution, abuse of process or conspiracy. At this stage, no set of facts exist separate from these claims which could support independent due process or equal protection claims. As such, there is no constitutional right to support the plaintiff's § 1983 count.

In order to maintain a substantive due process claim, as noted in the City's Memorandum, the plaintiff must show "not only that the official's actions shock the conscience, but also that the official violated a right otherwise protected by the substantive Due Process clause." *Martinez v. Cui,* 608 F.3d 54, 64 (1st Cir. 2010). The plaintiff cannot establish that Gaudet and Powell's actions sufficiently shock the conscience to maintain that essential element and threshold inquiry. The cases discussed at length by the City set forth behavior "so egregious, so outrageous that it may be fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8 (1998). Nothing in the facts evident in the record, discussed below, would raise an eyebrow, let alone shock the conscience. If the threshold question is answered in the negative, then it is irrelevant if a constitutional right also exists since that analysis is never reached; but in this case, no such right, as discussed, exists. As such, there is no independent cause of action under substantive due process to support the plaintiff's Complaint.

Moreover, as further detailed by the City, the plaintiff cannot show, in support of an equal protection claim, that he was treated differently from other property owners in the City about whom zoning complaints were made or that Gaudet and Powell's treatment of him was anything other than standard practice in such matters. Indeed, the evidence is to the contrary: the Building Department

7

did not act without reasoned, researched investigation and analysis of the plaintiff's use of his property; they then subsequently gave him every consideration to allow him to bring his building and use thereof into compliance; granted numerous continuances to facilitate such compliance; and resorted to issuing violation notices only after the plaintiff repeatedly promised, but failed to comply with the cease and desist order. *See generally*, City's Memorandum of Law (argues no substantive or procedural due process right under the 14th Amendment to be free from malicious prosecution or abuse of process in the First Circuit; insufficient basis for 'shocks the conscience' element to maintain substantive due process claim based on executive action; absence of evidence that plaintiff treated differently from similarly situated people or that alleged differential treatment resulted from gross abuse of power, invidious discrimination or other fundamental procedural unfairness).

In determining the applicability of the qualified immunity defense, the absence of a constitutional right forecloses analysis of the second inquiry, namely whether Gaudet and Powell could be said to have known that such a right existed at the time they were handling the zoning matter, and certainly not the third step to determine if their actions can be viewed as or rise to the level of violating any perceived constitutional right. Even if the plaintiff successfully argues the existence of a constitutional right, however, the qualified immunity defense is only defeated by proving the same level of "shocking the conscience" behavior necessary for the substantive due process claim. *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 36 (1st Cir. 2010) ("shocks the conscience" test part of qualified immunity analysis). Again, this the plaintiff cannot do. Essentially, the evidence shows that Gaudet and Powell's actions amounted to investigating and proceeding on a complaint of a zoning and/or building code violation, the plaintiff's appeal of the violation notices and the officials' reasonable expectation that their enforcement efforts would be validated upon adjudication.

The facts as established by deposition testimony and discovery responses indicate that in August 2006, the Building Department received a call from City Councillor Sally Collura about a possible zoning/building code violation at the plaintiff's property. [5] *See* Plaintiff's Complaint,

---

5 More than 90% of zoning complaints investigated by the Building Department originate from neighbors or other concerned callers. Gaudet/Powell Answers to Interrogatories, No. 8, attached as Exhibit KK.

attached as Exhibit C, at ¶ 25.  While Gaudet knew Collura initially in her capacity as a community activist and later as a City Councillor particularly interested in zoning matters, he had no particular relationship with her to support an inference that he would conspire to violate the plaintiff's constitutional rights or otherwise institute a zoning enforcement action to please or placate her. [6] Ralph Gaudet's Affidavit, attached as Exhibit DD, at ¶¶ 2-3. Powell had never knowingly even met Collura before her complaint and knew only that she was a City Councilor.  Patrick Powell's Affidavit, attached as Exhibit T, at ¶¶ 2. Significantly, neither Gaudet nor Powell were aware that, on the day she called the Building Department to report the alleged zoning/building code violation – that a tenant was residing in an upstairs room at the property that had no bathing facilities – Collura had been fired by the plaintiff from a job at which she had worked for 12 years and had worked in the building in question.  Ralph Gaudet's Affidavit, attached as Exhibit DD, at ¶ 3; Patrick Powell's Affidavit, attached as Exhibit T, at ¶¶ 3.  In any event, even if Gaudet and Powell had known of the termination, many of the complaints they receive about zoning violations arise as a result of bad feelings between neighbors or similar scenarios.[7] Pertinent Portions of Ralph Gaudet Deposition of May 12, 2011, attached Exhibit K, at p. 97-98.  Regardless of the motive of Collura or any other complainant, the Building Department is charged with investigating and acting upon complaints from the public or officials.  However, consistent with the Building Department's heavy work load and practice of prioritizing investigations according to their severity or public safety nature, Collura's complaint, which was not given any sort of priority, was placed on the "to be investigated" pile.  Pertinent Portions of Transcript of Ralph Gaudet's Deposition of May 19, 2011, attached as Exhibit H, at p. 6-7; Powell Deposition, Exhibit G, at p. 45.

Between August 2006 and January 2007, no investigation was performed on the complaint. Powell Deposition, Exhibit G, at 49; Gaudet Deposition of May 19, 2011, Exhibit H, at p. 6.  In January 2007, Powell's review of both the Building Department and Waltham Zoning Board of

---

6 Gaudet and Collura were in the same graduating class from Waltham High School, but while they knew of each other, they were not friends and were merely two students in a class of approximately 800.  Gaudet Affidavit, Exhibit DD, at ¶ 2.
7 With many years' experience as a building inspector, Gaudet testified that "all zoning matters start with somebody being upset about something", Gaudet Deposition of May 19, 2011, Exhibit H, at p.46, and "every time there's a complaint, there's basically a grudge going on between the parties." Gaudet Deposition of May 12, 2011, Exhibit K, at p. 97.

Appeals (ZBA) files associated with 57 Grant Street revealed that in 1967 the property had been the subject of a variance application to create three professional offices or, alternatively, two professional offices and one apartment at the property by the then owner, an optometrist, and that the ZBA had granted a variance only for three professional offices.  Powell Deposition, Exhibit G, p.57-65.; Minutes From Zoning Board of Appeals Meeting dated February 9, 1967, attached as Exhibit B; Variance dated March 30, 1967, attached as Exhibit A.  Minutes of the ZBA meeting noted that such offices were intended to encompass the category including "physicians, surgeons or dentists …, architects, engineers, lawyers, tutors or like professional persons."  ZBA Minutes, Exhibit B.

The City's first contact with the plaintiff occurred on January 27, 2007 when Powell wrote requesting permission to inspect the property to determine its use: namely, whether it was being used as a residence and whether the plaintiff's current use conformed with the restrictions of the 1967 variance.   Letter from Patrick Powell to Robert Snyder dated January 29, 2007, attached as Exhibit J.  The inspection took place on February 7, 2007, at which time Powell noted that the first floor office was being used as office space and as a warehouse for, and shipping and receiving of, small mechanical items, while one room on the second floor contained a masseuse table. He was unable to access the second upstairs room, but later did so on February 27, 2007, when he observed it had no second means of egress or bathing facilities, but contained a couch, a chest of drawers suitable for clothing and other indicia of living arrangements.  Powell Deposition, Exhibit G, at pp.73-74.  The room bore no evidence that it was being used as an office, professional or otherwise, although Powell later learned that Leon Shabbott, the plaintiffs' tenant, ran a roofing business out of the room. *Id.* at pp.74, 86.

The next several months were spent working only intermittently on 57 Grant Street, but at length Powell determined that the plaintiff's use of the property was inconsistent with the 1967 variance, namely that there was evidence of overnight stay at the property and that the shipping and receiving, masseuse and roofing contractor businesses did not fall within the "professional use" restriction set forth in the variance.  Consistent with this analysis, he issued a cease and desist order to the plaintiff on June 27, 2007 to terminate such activities within thirty days or show evidence that the plaintiff intended to apply to the ZBA with respect to the property.  Letter from Patrick Powell to

Robert Snyder dated June 27, 2007, attached as Exhibit M; Powell Deposition, Exhibit G, at p.84..

At no time did Gaudet or Powell consult with Collura about the cease and desist order or take any

direction from her as to interpretation of Powell's observations and findings or enforcement action.

Ralph Gaudet's Affidavit, attached as Exhibit DD, at ¶ 5; Patrick Powell's Affidavit, attached as

Exhibit T, at ¶¶ 5.

It is, and was in the plaintiff's case, the Building Department's general practice to refer

owners to the ZBA in cases involving properties with ZBA-issued variances so that the ZBA can

properly determine whether an owner's use of the property complies with the variance. Gaudet

Deposition of May 19, 2011, Exhibit H, at p. 23 (stating "If it was under the Board of Appeals and if

changes were going to be made to the property from the original approval, . . . you had to go back to

the Board of Appeals to get that approval. That's the way we dealt with cases for years.") Although

the cease and desist order issued to the plaintiff is couched in terms of applying to the ZBA to

"modify the prior variance to accommodate the present use", such action is not actually permitted

since the ZBA cannot modify a use variance. *See*, G.L. c. 40A, § 10 . Nevertheless, the ZBA was

the forum for the plaintiff to either appeal the cease and desist or apply for a ruling that his use was

proper under the variance. That Powell, through the cease and desist order, garbled what is a

confusing area of law even for land use legal practitioners is not evidence of egregious behavior

sufficient to shock any conscience, or support either a due process or equal protection claim, but,

instead, a misguided attempt to direct the plaintiff to the correct and authorized body to rule on the

zoning dispute.[8]

In responding to the cease and desist order, the plaintiff in a July 26, 2007 letter to City

Solicitor John Cervone (on which the plaintiff did not copy Powell), tacitly conceding some if not all

of the bases for the cease and desist letter, advised that he had "ceased and desisted from any ...

activity ... not in compliance with the existing Zoning Variance" and would prepare an application

to the ZBA to bring his property in compliance with the variance. Letter from Robert Snyder to City

---

8  That even attorneys can mis-step in the minefield that is land use law is abundantly evidenced by the subsequent actions of Attorney
Robert Casey, hired by the plaintiff to handle the application process with the ZBA, including failing to file proper documentation and
failing to recognize the limited authority of the Waltham ZBA to grant or modify a use variance.
Gaudet acknowledged that he was, and to some extent remains, unclear on the ZBA's authority with respect to use variances; however,
he testified that he knew at the very least that he was not the final arbiter on a property which was subject to a ZBA issued variance,
hence the attempt to direct the plaintiff to the ZBA.

Solicitor John Cervone dated July 26, 2007, attached as Exhibit N. He thereafter on August 8, 2007

submitted to Powell a copy of a purported application for modification of the 1967 variance,

although the plaintiff did not also submit it to the ZBA, thus it was never filed for hearing. ZBA

Application/Petition Form from Robert Snyder date stamped August 8, 2007, attached as Exhibit O.

Although a year had now elapsed since Collura's first complaint to the Building Department, the

seemingly drawn out procedure of investigating and enforcing violations was not inconsistent with

many zoning/building code violation cases which did not present an immediate public safety issue,

as with 57 Grant Street. Gaudet Deposition of May 12, 2011, Exhibit K, at pp. 78-79; Powell

Deposition, Exhibit G, at p.169.

       With receipt of the ZBA application, Powell and Gaudet believed the plaintiff was attempting

compliance with the cease and desist order. However, on September 7, 2007, the plaintiff wrote

again to Powell complaining that he had not received a response to his June 27, 2010 letter (which

actually had not required a response and which had not been sent to Powell) and opining that

obviously the City no longer believed the property to be in violation of "current zoning" and that the

cease and desist order had been "all some kind of misunderstanding." Letter from Robert Snyder to

Patrick Powell dated September 7, 2007, attached as Exhibit P. Powell informed the plaintiff in

writing that, in fact, the cease and desist order was in effect, at which time the plaintiff hired

Attorney Robert Casey to represent his interests in the zoning/building code matter. Letter from

Patrick Powell to Robert Snyder dated September 18, 2007, attached as Exhibit Q. Attorney Casey

wrote to Powell on October 2, 2007 confirming that, "Mr. Snyder is anxious to comply with the

applicable law" and making general, although largely irrelevant observations about the plaintiff's

improvements to the property and contribution to the city, but making no mention of an application

to the ZBA. Letter from Robert Casey to Patrick Powell dated Oct. 2, 2007, attached as Exhibit LL.

       On November 30, 2007, five months after issuance of the cease and desist order, with no

activity on the cease and desist order in sight, Powell issued a $50 non-criminal violation ticket for

"violation of Zoning Board of Appeals conditions Case 67-5" pursuant to the statutory scheme under

G.L. c. 40, §21D. Notice of Violation dated November 30, 2007, attached as Exhibit R. The purpose

of the ticket in this instance, as in all such zoning/building code enforcement matters, was solely to

gain the attention of the plaintiff and not to punish or generate fines.  Gaudet Deposition of May 19, 2011, Exhibit H, at pp. 24-25; Powell Deposition, Exhibit G, at p. 106.  Indeed, a response was immediately forthcoming as the plaintiff's attorney filed an appeal of the ticket with the Waltham District Court.  Letter from Robert Casey to Waltham District Court Clerk Magistrate dated December 4, 2007, attached as Exhibit S.

The plaintiff's Complaint states that, "on December 7, 2007 the Building Department of Waltham submitted an application for a complaint against Snyder in the Waltham District Court." Complaint, attached as Exhibit F, ¶ 42.  This is patently false.  Although copies of tickets issued pursuant to G.L. c. 40, §21D are sent to the district court in the event of an appeal or enforcement action (the tickets are in triplicate to facilitate such action), no such application was ever made by the City at any time on 57 Grant Street.  The City only ever appeared in Waltham District Court to respond to the plaintiff's appeals of the issued tickets.  (*See* City's discussion of G.L. c. 40, §21D statutory scheme in Memorandum of Law.)  Dispositive of whether the cease and desist order and subsequent ticket were validly issued, Clerk Magistrate Finucane did not dismiss the ticket at the January 16, 2008 hearing as requested by the plaintiff's appeal, but continued the hearing to allow compliance. Affidavit of Patrick Powell, Exhibit T, ¶ 14.

Thereafter began several months of, at best, mis-steps by Attorney Casey and, at worst, a calculated effort to circumvent compliance with the cease and desist demand.  First, Attorney Casey wrote to the City's attorney and Powell asking for the necessary paperwork to file a ZBA application – which neither the City's attorney nor Powell were in possession of – and was promptly directed to the ZBA employee who could assist him.  Letter from Robert Casey to Patrick Powell and Bernadette Sewell dated January 21, 2008, attached as Exhibit X; Email from Bernadette Sewell to Robert Casey dated January 24, 2008, attached as Exhibit Y.  Having obtained a postponement of the second hearing date before the Clerk Magistrate with the City's assent, Attorney Casey eventually filed an application with the ZBA on April 10, 2008 and requested a May 20, 2008 hearing date.  Unfortunately, Attorney

Casey failed to file the necessary paperwork with the application – apparently unaware that an abutters plan is required for variance related applications – and thus withdrew the petition until such a plan could be obtained. Letter from Robert Casey to Waltham District Court Clerk Magistrate dated May 29, 2008, attached as Exhibit Z.

On May 21, 2008, after learning that the May 20, 2008 hearing had not taken place and that the plaintiff's representations to resolve the outstanding violations at the property notwithstanding, the property was no closer to compliance than when the cease and desist letter had issued in June 2007, Powell issued a second ticket to the plaintiff under the G.L. c. 40, §21D statutory scheme in the amount of $200. He issued a third ticket in accordance with the statute on May 22, 2008 in the amount of $300 with the notation that this fine was for each and every day that the violations existed until abated. Notices of Violation dated May 21, 22, 2008, attached as Exhibit AA; Powell Deposition, Exhibit G, at pp. 115-116.

Although the Building Department regularly issues tickets in the amount of $50, $200 and $300 on consecutive dates absent compliance, in accordance with the statutory scheme, it also habitually staggers issuance of the tickets if the property owner is attempting to resolve the violation. Powell Deposition, Exhibit G, at pp. 102-103, 105, 186; Gaudet Deposition of May 12, 2011, Exhibit K, at pp. 27-29. The intent of the Building Department, through Gaudet and Powell, was and is to achieve compliance with the zoning ordinance and building code; issuance of violation notices is a tool with which to obtain both the attention and cooperation of property owners in violation. Powell Affidavit, Exhibit T, at ¶ 14; Gaudet Affidavit, Exhibit DD, at ¶ 10. The City issued a $50 ticket to the plaintiff in November 2007 because he failed, as promised, to file a petition with the ZBA. It issued subsequent tickets on May 21 and 22, 2008 because the plaintiff failed, as promised, to follow through with a hearing before the ZBA on May 20, 2008 on the petition filed the previous month. Powell Deposition, Exhibit G, at pp. 115-116.; Gaudet Deposition of May 19, 2011, Exhibit H, at pp. 38-39. Somewhat in

14

desperation, the Building Department was attempting to get the plaintiff's attention and achieve compliance with the building code and 1967 variance. Powell Deposition, Exhibit G, at pp. 206, 213; Gaudet Deposition of May 19, 2011, Exhibit H, at pp. 34, 38.

The plaintiff's Complaint notes, in support of the allegation of conspiracy among the defendants, that the $200 ticket was issued on the same day the plaintiff prevailed in a small claims action against Collura's brother in Newton District Court. Plaintiff's Complaint, Exhibit F, at ¶ 45. In fact, the small claims hearing took place on May 22, 2008 and was entirely unrelated to Powell's issuance of the $200 and $300 violation notices. Newton Small Claims Docket. Indeed, neither Gaudet nor Powell were aware that Collura had a brother, let alone that the plaintiff and Collura's brother were engaged in litigation and that the plaintiff had prevailed, so as to justify possible retaliatory action on behalf, or at the behest of, Collura. Powell Affidavit, Exhibit T, at ¶ 2; Gaudet Affidavit, Exhibit DD, at ¶3.[9]

Although copies of the May 21-22 tickets were sent to Waltham District Court, neither Powell nor Gaudet made any application for issuance of a complaint against the plaintiff. Instead, the plaintiff, through Attorney Casey, appealed the tickets to the district court. Casey acknowledged in the cover letter to the court that he had previously obtained continuances of hearings in the pending matter to facilitate filing a petition with the ZBA, but that the May 20, 2008 hearing did not go forward and the petition was withdrawn because he had failed to understand ("it is a mystery to this office") the nuances of obtaining an acceptable list of abutters. Letter from Robert Casey to Clerk Magistrate dated May 29, 2008 attached as Exhibit Z.

---

9 In a case similar to the matter at bar, *Brett v. Temkina*, F.Supp.2d, 2006 WL 167496 (D. Mass), Brett, the town building inspector brought an enforcement action against property owner Teminka for various building code and zoning violations relating to a multi-family rental property. Teminka countersued, claiming that Brett's action was part of a retaliatory scheme against her after she previously filed a charge with the Massachusetts Commission Against Discrimination (MCAD) against the town's school department. The Court dismissed the action where Teminka failed to plead any facts to support knowledge on Brett's part of the MCAD action, noting "any theory that Brett sought to unlawfully punish her for seeking an official redress of her grievances against school officials" could not be sustained absent such evidence. *Id.* at 3. Similarly, there is no forthcoming evidence that Gaudet and Powell had any knowledge of the animosity between Collura and the plaintiff such that it influenced their official decisions. Without such knowledge, Gaudet and Powell's actions are merely garden variety zoning/building code decisions with which the plaintiff disagreed.

The plaintiff eventually filed an acceptable petition package with the ZBA on July 1, 2008 and a hearing was scheduled for September 9, 2008. At the hearing, the plaintiff's attorney made a number of significant concessions: that the first floor of 57 Grant Street was being used to store and ship metal screws for medical applications; that the second floor was in use by a masseuse and a building contractor; and that Leon Shabott (the building contractor) occasionally stayed over at the property with and without his sons. Transcript of ZBA hearing of September 8, 2008 (sic) attached as Exhibit DD, at pp. 3, 5, 10-11. Interestingly, also at the hearing, at which his presence was requested by the ZBA, Powell evidenced his misunderstanding of the ZBA's authority with respect to modification of the variance. The plaintiff claims that Powell "effectively ordered Snyder" to petition for "modification of a zoning variance" as evidence that Powell intentionally misdirected the plaintiff to frustrate or otherwise harass him. Plaintiff's Complaint, Exhibit D, at ¶ 49. However, Powell's statement to the ZBA that "We did not find [the plaintiff's current use] to be consistent with what a professional office would be [and] [w]e did ask Mr. Snyder to go back to the Board of Appeals and modify the prior variance granted, and after delays we are here today", speaks volumes of his own misguided belief of the law of use variances. ZBA hearing, Exhibit DD, at p. 7-8. Indeed, there was considerable discussion among members of the ZBA with Powell and Attorney Casey of the specific use of the building before a ZBA member raised the issue that the ZBA had no authority to grant a use variance or change a use variance which had already issued. *Id.* at 21-22. In effect, various City officials, including Powell and Gaudet, believed the forum for discussion of the plaintiff's use of the property was the ZBA without a clear understanding of the form the discussion should take. Such a misunderstanding was inadvertent, certainly unfortunate, but cannot, under any circumstances, rise to the level of intentional behavior which would shock the conscience and give rise to a constitutional violation claim.

Indeed, if Attorney Casey had properly researched and analyzed his client's options with respect to current use of the property and the cease and desist letter, such discussion would have been averted since he would have chosen the appropriate petition to file with the ZBA: namely an appeal of the cease and desist. That Attorney Casey himself mishandled the case by failing to

appreciate use variance law was evident in the immediate termination of his services and retention of Attorney Edward Lonegran by the plaintiff.  Robert Casey Notice of Withdrawal dated September 17, 2008, attached as Exhibit EE.

On November 15, 2008, notwithstanding Attorney Sewell's representation to Attorney Lonegran that she could not appear at a hearing he had requested before the Clerk Magistrate due to prior commitments, Attorney Lonegran appeared at Waltham District Court and renewed his client's appeal of the c. 40, § 21D violations.  Powell happened to be in the courthouse on an unrelated matter, but was asked to attend the hearing without counsel, at which time Lonegran made a presentation to the Clerk Magistrate of his client's case.  Powell Deposition, Exhibit G, at pp. 121, 217.  The matter was again continued at that time.

On December 4, 2008, the parties, both represented by counsel, met with Clerk Magistrate Finucane.  At that time, the proceedings ended as follows:  that, by representation of the plaintiff, overnight residential use of the property had ceased and therefore was resolved as a zoning violation; that the plaintiff, notwithstanding previously filing an incorrect petition with the ZBA, would re-file to clarify the legality of his business use of the property; and that the City would, depending on the outcome of the plaintiff's ZBA petition, either close its investigation or reinstitute its complaint regarding violations at the property.  Powell Affidavit, Exhibit T, at ¶ 12.  Instead, the case slipped somewhat into oblivion, with neither party taking any affirmative action until the plaintiff filed the present suit.

This exhaustive discussion of the factual background is illustrating in its banality – that is, that there was no meeting of the conspiratorial minds of Gaudet, Powell and Collura; that Collura made the complaint of possible violations at the property for her own reasons not disclosed to Gaudet and Powell; that the Building Department failed to immediately investigate the complaint because it did not pose a threat to public safety, but that when it did investigate the property, Powell

found that the plaintiff's use of the building was inopposite to the 1967 variance barring residential

use and restricting the nature of the business conducted to "professional offices"; that eventually a

cease and desist order issued with respect to the offensive use with the proviso that the plaintiff

could petition the ZBA for modification of the variance; that although that option was inconsistent

with prevailing law, it at least directed the plaintiff to the correct forum to discuss the variance and

current use, and that any land use attorney hired to represent the plaintiff's interests could and should

have articulated and presented the correct petition to the ZBA in a form designed to best assist the

plaintiff; that the plaintiff repeatedly acknowledged violations at the property including overnight

residence by his tenant and the business or commercial use of the property inconsistent with the

1967 variance both before the ZBA and the Clerk Magistrate; that Powell issued violation notices

only after the plaintiff repeatedly promised and then reneged on the promise to bring his building

into compliance with the variance.  There is none of the egregious, shocking, "truly horrendous"

behavior or even an illustration of "disquieting" conduct which would bar Gaudet and Powell's

qualified immunity defense.  *Pagan v. Calderon,* 448 F.3d 16 (1st Cir. 2006).  *See also Clark v.

Boscher,* 514 F. 3d 107, 113 (1st Cir. 2008) ("a run-of-the-mill land-use case such as this one [where

plaintiffs complain that they were denied the necessary permits to develop residential subdivisions

on certain land and that the City denied such permits in furtherance of its own interests] does not rise

to the level of behavior that shocks the conscience"); *Mongeau v. City of Marlborough,* 492 F. 3d

14, 19 (1st Cir. 2007) (stating that in order to assert a valid substantive due process claim, plaintiff

who was involved in a land-use dispute was required to prove that the defendant city government's

actions shocked the conscience and holding that Building Inspector had "denied his building permit

and interfered in the zoning process for improper reasons – failed to shock the conscience"); *Licari

v. Ferruzzi,* 22 F.3d 344, 350 (1st Cir. 1994) (plaintiffs failed to satisfy "shocks the conscience"

prong where plaintiffs alleged that "hostility and animus" motivated the revocation of a building

permit and the issuance of certain enforcement orders).

Where neither Gaudet nor Powell's conduct qualifies as "extreme and egregious," or "truly outrageous, uncivilized, and intolerable", the plaintiff's claims against them are barred under the doctrine of qualified immunity and should be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants Gaudet and Powell respectfully request that this Honorable Court grant their Motion for Summary Judgment on all claims against them in their official and individual capacities.

Respectfully Submitted,
Ralph Gaudet and Patrick Powell,
By their attorney,

Bernadette D. Sewell, BBO#557306
Assistant City Solicitor
City of Waltham Law Dept.
119 School Street
Waltham, MA 02451
(781) 314-3330
bsewell@city.waltham.ma.us

I hereby certify that a true copy of the above document was served upon each party appearing pro se and attorney of record for each other party by mail/fax/email/hand on _____ 6 · 14 · 11 _____
by _____
BERNADETTE DUNN SEWELL