UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Robert S. Snyder
    Plaintiff,

C.A. No. 1:09-cv-12055-RWZ

Serafina Collura, Individually and as
City Councilor for the City of Waltham;
Ralph E. Gaudet, Individually and as
Superintendent of Public Buildings of the
City of Waltham of Waltham; Patrick Powell,
Individually and as Senior Building Inspector
for the City of Waltham; and The City of Waltham,
    Defendant(s).

### DEFENDANT CITY OF WALTHAM'S MOTION FOR RECONSIDERATION BASED ON FIRST CIRCUIT DECISION IN THIS CASE

Based upon the United States Court of Appeals for the First Circuit's recent ruling that the governmental abuses alleged by Snyder *did not violate federal law*, the City of Waltham moves this Honorable Court to reconsider its decision denying summary judgment to the City based on manifest error of fact and law and/or a need to prevent manifest injustice in the above-captioned case *See Snyder v. Gaudet*, - F. 3d -, 1st Cir. (Mass.), June 25, 2014. *See* Ex. 1. Indeed, where the First Circuit has now ruled that none of the governmental abuses alleged by Snyder violated federal law, none of the federal claims against the City can survive summary judgment *as a matter of law* because no constitutional deprivation has occurred (no federally-protected right has been established) - the *sine qua non* of any cognizable § 1983 action. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality Rehnquist, CJ.) (§ 1983 "is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred'").

On June 25, 2014, the First Circuit reversed this Court's denial of Ralph E. Gaudet and Patrick Powell's (City's building inspectors) motion for summary judgment on Robert S. Snyder's federal claims. *See* Ex. 1. On appeal, Snyder conceded that his only viable federal cause of action pending in his district court action was his "class of one" equal protection claim.[1]

---

[1] Note: the First Circuit has definitively ruled that there is no substantive due process right to be free from malicious prosecution, abuse of process, or conspiracy to commit same (the wrongs originally alleged by Plaintiff in his complaint) in its circuit. *See Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir.

1

The First Circuit reviewed said equal protection claim and held: "[g]iven the undisputed facts, no law clearly established at the time Gaudet and Powell acted would allow Snyder to prevail on his equal protection claim by showing he was treated differently than the prior owner. [Plaintiff] fares no better in his attempt to compare how the city treated him after he fired Collura to how it treated him before he did so... Where, as here, however, municipal officials did not violate any clearly established federal law, federal law provides no basis for making local government officials pay damages." *See Snyder v. Gaudet,* - F. 3d -, 1st Cir. (Mass.), June 25, 2014 (emphasis provided).[1] Indeed, the First Circuit expressly found: "...Snyder cannot prevail in showing differential treatment" and "...both prior owners used the building exactly as the city had originally authorized it to be used. Snyder's use, in contrast, departed significantly from that original purpose..." and that the undisputed facts made clear "that there was a rational basis for distinguishing between Snyder and the prior owner..." *See Snyder,* - F. 3d -, 1st Cir. (Mass.), June 25, 2014. Where the First Circuit has thus definitively established that no constitutional deprivation occurred, summary judgment must enter in favor of the City of Waltham on all of the federal claims.

Municipalities are only subject to liability under 42 U.S.C. §1983 for alleged violations of an individual's constitutional rights resulting from an established municipal policy, custom, or practice. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978). Thus, a municipality (including individuals alleged to have acted under color of state law in their official

---

2001) (ruling that the Due Process Clause cannot serve to ground a § 1983 claim based upon malicious prosecution because "there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution.... We have followed the [Supreme] Court's lead in this respect, *see e.g. Roche,* 81 F. 3d at 256, and we hew to that line today."); *Faust v. Coakley,* 2008 WL 190769 (D. Mass. 2008, *Zobel, District Ct. Judge*) (dismissing § 1983 claims in case where plaintiffs alleged they had been wrongfully tried on weapons and kidnapping charges, ruling that plaintiffs had failed "to state a claim under § 1983 for violations of their constitutional rights" because "these allegations – which amount to claims of malicious prosecution, abuse of process, and *Brady* violations – are not cognizable as § 1983 claims in this instance," where, in relevant part: (1) "there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution;" and (2) "the First Circuit does not recognize § 1983 claims based upon an alleged abuse of process") – allegations which may only constitute claims under state law and state law remedies.

2

capacities) may not be held liable under 42 U.S.C. §1983 for actions of its employees based on a theory of respondeat superior. *See Brown,* 520 U.S. at 403; *Monell v. Department of Social Servs.,* 436 U.S. at 694; *Hafer v. Melo,* 502 U.S. 21, 22-27 (1991) (distinguishing between suits against municipal officers in their official and individual capacities and recognizing that a suit against individuals in their official capacities "should be treated as a suit against the State"). Where the First Circuit has ruled that there was no violation of a recognized federal or constitutional right in this case, the City thus cannot be liable under 42 U.S.C. §1983 for violating Snyder's constitutional rights resulting from a municipal policy, custom, or practice. As such, summary judgment must enter for the City on Plaintiff's § 1983 claim.

Based on the foregoing, all of the claims over which this Court has original jurisdiction should be dismissed. Accordingly, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of action since the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *See Kolari v. N.Y. Presbyterian Hosp.,* 455 F. 3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988).

In the event this Court chooses to retain its supplemental jurisdiction over Plaintiff's remaining state-law causes of action, it is clear that given the First Circuit's ruling that the governmental abuses alleged by Snyder did not violate federal law, summary judgment must enter for the defendants on his state Civil Rights Act claim where Snyder cannot establish the requisite elements of said cause of action: under the Massachusetts Civil Rights Act, a plaintiff must prove: "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Brown v. Sweeney,* 526 F.2d 126 (D. Mass. 2007) (Young, J); *Shaheed-Muhammad v. Dipaolo,* 393 F.Supp.2d 80, 93 (D.Mass.2005) (Gertner, J.) The absence

3

of a constitutional deprivation definitely established by the First Circuit's June 25, 2014 decision requires summary judgment to enter for the defendants.

Summary judgment must also enter for the municipal defendants on Plaintiff's remaining state law claims since he cannot establish the elements of his state malicious prosecution[2] or abuse of process[3] claims, which he bears the burden to prove at trial. In the instant case, the City proceeded against Snyder by following the state law non-criminal disposition procedure not by bringing a criminal complaint. "It has been said – and with good reason – less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil rather than a criminal [proceeding]." Prosser on Torts (2d ed.) p. 665. "All that is necessary, where civil proceedings are involved, is that the "claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication.'" *Chervin,* 448 Mass. at 103 (quoting *Hubbard v. Beatty & Hyde, Inc.,* 343 Mass. 258, 260-261 (1961). Having examined Snyder's allegations of alleged governmental abuse, the First Circuit held that: "…Snyder cannot prevail in showing differential treatment" and "…both prior owners used the building exactly as the city had originally authorized it to be used. Snyder's use, in contrast, departed significantly from that original purpose…," while noting that the undisputed facts made clear "that there was a rational basis for distinguishing between Snyder and the prior owner…." *Snyder,* - F. 3d -, 1st Cir. (Mass.), June 25, 2014. As such, Snyder cannot establish the requisite elements of these state law claims. *See supra* notes 2 and 3.

Furthermore, summary judgment for defendants is required on Snyder's remaining state law claims because of the existence in the summary judgment record of an ***official, certified***

---

[2] The elements of state civil malicious prosecution are (1) the institution of a prior civil proceeding against the plaintiff; (2) with malice; and (3) without a reasonable belief that the allegations would be held valid upon adjudication. *See Chevrin v. Travelers Insurance Co.,* 448 Mass. 95, 103 (2006); *Contrast Nieves v. McSweeny,* 241 F. 3d 46, 53 (1st Cir. 2001) (malicious prosecution claim in criminal proceedings requires probable cause for charges).

[3] Under Massachusetts state law, to sustain an abuse of process claim, process must have been used "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Millennium Equity Holdings, LLC v. Mahlowitz,* 456 Mass. 627, 636 (2010) (three elements: process was used, for an ulterior or illegitimate purpose, resulting in damage).

*state court docket entry* made by the Waltham District Court, which Plaintiff declined to appeal and has thus waived the ability to challenge at bar. It is an undisputed fact that in the zoning enforcement action case which Plaintiff's alleged malicious prosecution and abuse of process claims are predicated, the state court issued a final docket entry that reads, verbatim:

> Docket entry to clarify Court record requested by Trial Court (Dan Sullivan) after consultation with former Clerk-Magistrate Michael Finucane: At initial hearing Clerk-Magistrate heard enough evidence to find R. Snyder responsible of violation on appealed civil ticket, re: 57 Grant St. Subsequent court appearances scheduled to give Snyder opportunity to come into compliance & avoid imposition of fine. Viewing Snyder as having come into substantial compliance as of final court appearance, the case was disposed of from the Court's docket at that time, without prejudice to City of Waltham pursuing new zoning tickets in the future.

*See* Exhibit 1 (originally attached to Defendant City of Waltham's Reply as Ex. 1).[4] This docket entry, made after several hearings before a neutral magistrate on the Plaintiff's appeal of the civil violation ticket, is dispositive; thus, where Plaintiff's appeal of the *civil* tickets *was not terminated in his favor*, summary judgment must enter for the Defendants. Notably, the state court's docket entry proves that Defendants in fact "reasonably believed that there [was] a chance that [the] claim may be held valid upon adjudication" - the grounds for belief required to justify commencement/prosecution of a *civil* rather than criminal proceeding, which is the applicable standard given the *noncriminal civil ticketing proceedings* at the heart of this case. *See Chervin*, 448 Mass. at 103 (articulating standard). Said official docket entry thus further disposes of all of the claims at bar where it definitively establishes that the zoning enforcement action regarding 57 Grant Street was both properly commenced and prosecuted by the City and its building officials.

---

[4] Tellingly, Snyder did not timely appeal from said docket entry. Rather than challenge the substance of the Waltham District Court's finding through the state appellate procedure, Snyder attempts to persuade this Court to doubt the official, certified court record. Snyder had the availability of an adequate state remedy, but chose not to use it; consequently, he may not now raise any "procedural due process" claim. *See Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 43 (1st Cir. 1994); *Beecy v. Pucciarelli*, 387 Mass. 589 (1982).

## CONCLUSION

For the foregoing reasons and those articulated by the City in its previous summary judgment filings (docket entries 50, 54, 65, and 86), and in light of the United States Court of Appeals for the First Circuit's recent ruling that the governmental abuses alleged by Snyder did not violate federal law, the Court's decisions dated March 30, 2012 and February 21, 2013 (docket entries 82 and 89) denying summary judgment to the Defendants is based on manifest error of law. Accordingly, Defendant City of Waltham respectfully requests that this Honorable Court reconsider its prior decision and enter summary judgment for the defendants on all of Plaintiff's federal and state law claims.

Respectfully Submitted,
By Defendants,

CITY OF WALTHAM,

By its attorney,

*/s/ Michelle Learned*
Michelle Learned, BBO#634955
Assistant City Solicitor
City of Waltham Law Dept.
119 School Street
Waltham, MA 02451
(781) 314-3330

Certificate of Service

I hereby certify that I have served a true copy of the foregoing memorandum of law upon the attorney of record for all the named parties by electronic filing and emailing same on July 8, 2014.

*/s/ Michelle Learned*
Michelle Learned

# Exhibit 1

**2014 WL 2871553**
Only the Westlaw citation is currently available.
United States Court of Appeals,
First Circuit.

Robert S. SNYDER, Plaintiff, Appellee,
v.
Ralph E. GAUDET; Patrick Powell, Defendants, Appellants,
Bernadette D. Sewell; City of Waltham; Serafina Collura;
Jeannette A. McCarthy, Defendants.

No. 12–1422.   |   June 25, 2014.

**Synopsis**
**Background:** Building owner filed § 1983 action against city and city officials alleging that city's enforcement of local land use ordinance against him violated his constitutional rights. The United States District Court for The District of Massachusetts, Rya W. Zobel, J., 2012 WL 1109112, denied officials' motion for summary judgment on qualified immunity grounds, and they filed interlocutory appeal.

**[Holding:]** The Court of Appeals, Kayatta, Circuit Judge, held that officials were entitled to qualified immunity from liability.

Reversed.

West Headnotes (6)

**[1]**   **Civil Rights**
         Government Agencies and Officers
         **Civil Rights**
         Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General

         To assess qualified immunity in § 1983 action, court must ask whether government official violated statutory or constitutional right that was clearly established at time of challenged conduct. 42 U.S.C.A. § 1983.

         Cases that cite this headnote

**[2]**   **Civil Rights**
         Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General

         For right to be "clearly established," for qualified immunity purposes, existing precedent must have placed beyond debate that particular conduct at issue violated plaintiff's rights. 42 U.S.C.A. § 1983.

         Cases that cite this headnote

**[3]**   **Constitutional Law**
         "Class of One" Claims
         **Constitutional Law**
         "Class of One" Claims

         To establish "class of one" equal protection claim, plaintiff must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for difference in treatment. U.S.C.A. Const.Amend. 14.

         Cases that cite this headnote

**[4]**   **Constitutional Law**
         "Class of One" Claims

         In "class of one" equal protection claim, proof of similarly situated, but differently treated, comparator is essential. U.S.C.A. Const.Amend. 14.

         Cases that cite this headnote

**[5]**   **Constitutional Law**
         "Class of One" Claims

         Plaintiff asserting "class of one" equal protection claim must show that he engaged in same activity as comparator, without such distinguishing

or mitigating circumstances as would render comparison inutile. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[6] **Civil Rights**
    Municipalities and Counties and Their Officers

It was not clearly established that building owner was treated differently from prior owner when city code enforcement officials cited him for violating land use ordinance, and thus officials were entitled to qualified immunity from liability in owner's § 1983 action alleging "class of one" equal protection violation, despite owner's contention that differences between his use and that of prior owner were immaterial because both used building for "professional offices," where prior owner used building for providing personal services by medical professionals, but current owner used it for coordinating contract work for roofing and paralegal services, and facilitating his business manufacturing small metal components, and city ordinance enacted between time city sent letter to prior owner condoning his use and time city cited current owner arguably affected degree of discretion afforded to city officers in applying variances. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Appeal from** The United States District Court for The District of Massachusetts, Rya W. Zobel, U.S. District Judge.

**Attorneys and Law Firms**

Bernadette Dunn Sewell, Assistant City Solicitor, City of Waltham Law Department, for appellants.

Zaheer A. Samee, with whom Leonard A. Frisoli and Frisoli Associates, P.C., were on the brief, for appellee.

Before LYNCH, Chief Judge, THOMPSON and KAYATTA, Circuit Judges.

**Opinion**

KAYATTA, Circuit Judge.

*1 Robert Snyder operated a business in a building he owned, and shared with two tenants, in a mostly residential area of Waltham, Massachusetts. After Snyder fired an employee who was a member of the Waltham city council, the former employee complained to the city building department that Snyder was using his property unlawfully. Code enforcement officers then scrutinized Snyder's use of his property and fined him under a local land use ordinance. Snyder eventually brought this suit under 42 U.S.C. § 1983 against the city of Waltham and five individuals, claiming a violation of his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. After unsuccessfully seeking summary judgment based on immunity defenses, two of the individual defendants filed this appeal. Finding that they are entitled to judgment as a matter of law, we reverse.

**I. Background**

In reviewing an interlocutory appeal from a denial of qualified immunity, we accept as given the facts that the district court ruled could be found by a reasonable jury viewing the evidence in the light most favorable to the plaintiff. *See Johnson v. Jones,* 515 U.S. 304, 313–19, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). We do not entertain challenges to the inferences drawn by the district court in doing so or to its determinations regarding the evidentiary support for the plaintiff's claims. *See id.;Cady v. Walsh,* ––– F.3d ––––, ––––, 2014 WL 2518865, at *10 (1st Cir. June 4, 2014). We can consider an interlocutory appeal of this kind, then, to the extent the appellants ground their arguments in the record as viewed most favorably to the plaintiff, leaving undisturbed all factual inferences implied by the district court's decision. *See Johnson,* 515 U.S. at 319. Here, while Gaudet and Powell sometimes stray from that path in their brief, the facts that ultimately prove dispositive are those that both sides agree we can assume to be true for purposes of this appeal. We

describe those facts below, adding some additional context.

Snyder's difficulties with the city began when he fired an employee, Serafina Collura, who served as a member of the Waltham city council. Collura soon complained to the city's building department that Snyder's use of his building violated a land use ordinance because, according to Collura, Snyder rented a portion of the second floor as a residence. Collura continued to pressure city officials to investigate Snyder over the following months.

Appellants Ralph Gaudet and Patrick Powell were Waltham's superintendent of public buildings and senior building inspector, respectively. Gaudet and Powell eventually did investigate Snyder. The district court found it reasonable to infer, and we accept for purposes of this appeal, that Gaudet and Powell knew of Collura's motivations and acted "in aid of [her] efforts." Powell inspected Snyder's property twice in February 2007, approximately seven months after Collura first complained. Although Powell initially indicated in a conversation with a city attorney that he had found no violations during his inspections, he later issued a citation to Snyder in June 2007. We assume that Powell's about-face can be attributed to pressure from Collura.

*2 In the citation, Powell found that Snyder had violated a zoning variance issued to the original owner of the building in 1967 by using it for purposes other than professional offices. The original owner, an optometrist, had sought to use the property for three medical offices and received a variance allowing its use as "professional offices." The original owner sold the property to another optometrist, who sold to Snyder in 1997. The parties dispute whether the variance allowed use of the second floor as a residence, but we need not consider the issue, because we accept solely for purposes of our consideration of this interlocutory appeal that Snyder never engaged in such residential use.

Snyder maintains that he complied with the variance because the building was used entirely for professional offices. But he has admitted the truth of several facts described in Powell's citation. First, Powell found, and Snyder has conceded, that one room in the building was used to perform massages.[1] Second, he has conceded that a second room was used as the office of a roofing contractor, who he says also used it for work as a paralegal. Finally, Powell found that Snyder used his own office as a "warehouse" for "receiving and shipping." Although Snyder disputes the characterization of his own office as a "warehouse," he admits that he used it to store the small metal components his company manufactures for eventual shipment to customers.

Powell's citation instructed Snyder to either cease and desist from violations of the variance, or show evidence that he was applying to the city's zoning board of appeals to modify the variance. If he did neither, he would face fines escalating to $300 per day. Snyder eventually pursued a modification, but the zoning board of appeals did not grant one. Meanwhile, the city issued several fines to Snyder, starting with a $50 fine in November 2007 (about four months after the citation issued), followed by further fines in May 2008, at which time Snyder was told that he would continue to be fined $300 for each additional day that passed until he corrected the violation.

Snyder contested the fines in the Waltham district court, which denied their enforcement in December 2008. Approximately two and a half years later, the court entered a docket entry, at the behest of an attorney for Waltham, to "clarify" that it had found sufficient evidence of a violation but had dismissed the fine because Snyder had later come into substantial compliance.

### II. Standard of Review

As noted above, we have jurisdiction only to consider Gaudet and Powell's legal argument that, on the facts described above, they were entitled to immunity. On that legal issue, our review is de novo. *Suboh v. District Attorney's,* 298 F.3d 81, 90 (1st Cir.2002).

### III. Analysis

[1] [2] To assess qualified immunity, we ask whether a government official "violated a statutory or constitutional right that was clearly established at the

time of the challenged conduct."*Plumhoff v. Rickard,* ----U.S. ----, ----, 134 S.Ct. 2012, 2023, ---- L.Ed.2d ----, ---- (2014) (internal quotation marks omitted). For a right to be clearly established, "existing precedent must have placed ... beyond debate" that the "particular conduct" at issue violated the plaintiff's rights. *Ashcroft v. al-Kidd,* ----U.S.----, ----------, 131 S.Ct. 2074, 2083–84, 179 L.Ed.2d 1149 (2011).

*3 In the district court, Snyder alleged that Gaudet, Powell, and the other defendants violated his rights to equal protection and substantive due process under the Fourteenth Amendment, and his right to be free from unreasonable seizure under the Fourth Amendment, and that they conspired to do so. The defendants moved for summary judgment, claiming among other points that Gaudet and Powell were entitled to qualified immunity. The district court denied that motion as to all claims and all defendants. On this appeal, Snyder relies only on his equal protection claim to defeat Gaudet and Powell's assertion of qualified immunity, thereby waiving any argument that the other claims survive the immunity defense. *See Tower v. Leslie–Brown,* 326 F.3d 290, 299 (1st Cir.2003). Snyder also asserts before us a violation of the Excessive Fines Clause of the Eighth Amendment, but he never presented that claim to the district court, so we will not consider it. See *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 774–75 (1st Cir.2010). We therefore train our review on his only preserved federal claim against these defendants: his equal protection claim. [2]

[3] Because Snyder contends that the government singled him out for differential treatment for reasons unique to him, rather than because of his membership in any group, his equal protection claim is of the "class of one" variety. *See id.*In such an equal protection claim, Snyder must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."*Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In claims such as Snyder's, the plaintiff ordinarily must also show that the defendant's differential treatment of the plaintiff was motivated by "bad faith or malicious intent to injure,"*Rubinovitz v. Rogato,* 60 F.3d 906, 911 (1st Cir.1995), but we need not reach that requirement because we find that Snyder cannot prevail in showing differential treatment.

[4] [5] In a class of one equal protection claim, proof of a similarly situated, but differently treated, comparator is essential. *See Cordi–Allen v. Conlon,* 494 F.3d 245, 250 (1st Cir.2007). In particular, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."*Id.* at 251 (internal quotation marks omitted). They must show that they "engaged in the same activity ... without such distinguishing or mitigating circumstances as would render the comparison inutile."Id. Moreover, this requirement "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.' " *Id.* (quoting *Olech,* 528 U.S. at 565 (Breyer, J., concurring)). Snyder has not argued that the rigorous similarity requirement should be relaxed due to any special circumstance of his case.

*4 Snyder does not point to any owner of another building, operating under a similar variance, who was allowed to use that other building as Snyder used his own. Instead, Snyder says he was treated differently than the prior owner of this particular property, who received a letter from Gaudet in 1994 stating that his use of the property was acceptable under the variance. In particular, according to the letter, the prior owner could use the "first floor office for Optometry" and the second floor for "residential use for the Optometrist and his/her family."Snyder points to this letter as proof that he was treated differently than the prior owner.

But Snyder also admits that he and his tenants used the property in very different ways than the prior owner: not for providing personal services by medical professionals but rather for, among other things, coordinating contract work for roofing and paralegal services, and facilitating Snyder's business manufacturing small metal components. These differences are relevant to the city's actions in this case. The variance was first requested and obtained by an optometrist who sought to use the building for medical offices. The next owner continued to use the building as an optometry office, and Gaudet's 1994 letter confirmed that this use was acceptable. In other words, both prior owners used the building exactly as the city had originally authorized it to be used. Snyder's use, in contrast, departed significantly from

that original purpose. These undisputed facts separate this case from those in which we have allowed an equal protection claim to proceed, such as where multiple landowners installed plumbing with no permit, in materially identical circumstances, but only one was required to disconnect the plumbing. *Rubinovitz*, 60 F.3d at 910–12.

Snyder nevertheless maintains that the differences between his use and that of the prior owner were immaterial because both used the building for "professional offices." We are skeptical that a roofing contractor and the owner of a manufacturing company, for example, qualify as professionals under the variance, as Snyder urges us to conclude. But even if we were to so conclude, our task is not to decide in the first instance how the variance should be applied. Rather, we need only to determine if there was a rational basis for distinguishing between Snyder and the prior owner. *See Cordi–Allen*, 494 F.3d at 250–51. In other words, the similarly situated standard requires more than a showing that the government erred in applying authority open to interpretation in a novel situation.[3] *See id.* at 251 (explaining that "[t]he 'similarly situated' requirement furnishes the limiting principle" that prevents "virtually every zoning decision" from leading to an equal protection case).

Snyder's claim is also weakened by the passage of thirteen years between Gaudet's letter to the prior owner in 1994 and the city's citation of Snyder in 2007. We have noted that "the most reliable comparisons are likely to be from roughly the same time frame," particularly in the land-use context, where "differential treatment following a time lag ... may indicate a change in policy rather than an intent to discriminate." Id. at 253. Here, indeed, the city may have changed its policy regarding the enforcement of variances. Gaudet and Powell point to a city ordinance passed in 2005 that arguably affected the degree of discretion afforded to city officers in applying variances. Snyder offers no rebuttal to the defendants' claim that the ordinance distinguishes his situation from that of the prior owner.

*5 [6] Given the undisputed facts, no law clearly established at the time Gaudet and Powell acted would allow Snyder to prevail on his equal protection claim by showing he was treated differently than the prior owner. And he fares no better in his attempt to compare how the city treated him after he fired Collura to how it treated him before he did so. Snyder cites no case suggesting, let alone clearly establishing, that a plaintiff in an equal protection case can use himself as a comparator. On the contrary, the Supreme Court and this court have always described equal protection claims as based on differential treatment between one person, or a group of people, and *"others similarly situated." E.g., Olech,* 528 U.S. at 564 (emphasis added). We are doubtful Snyder can use himself as his own comparator, as accepting that approach would have broad implications, converting any claim of retaliation (for any reason) into an equal protection case, and effectively eliminating the differential treatment element of equal protection claims. Nonetheless, we need not resolve that question because, as a factual matter, Snyder does not allege that Gaudet, Powell, or anyone in the city's building department knew before he fired Collura how he was using the property, so there would appear to be no differential treatment even if he were allowed to be his own comparator.

## IV. Conclusion

We acknowledge that many citizens looking at the facts of this case would perceive an abuse of government power. Indeed, we have assumed, solely for the purposes of this appeal, that Collura acted in bad faith, and that Gaudet and Powell knowingly contributed to her retaliatory effort. But local governments make countless decisions every day, many of which inevitably disadvantage someone who can credibly claim that a local official acted out of personal hostility. This is especially so in our smaller cities and towns, where many people know their public officials. State and local law often provides recourse for challenging the imposition of fines or the burdens of administrative rulings by local officials that violate state or local law. So, too, the political process may provide a venue for correcting or deterring abuses. And federal courts obviously play an important role in adjudicating claims that such abuses violate federal law. Where, as here, however, municipal officials did not violate any clearly established federal law, federal law provides no basis for making local government officials pay damages.

We therefore reverse the district court's denial of Gaudet and Powell's motion for summary judgment on Snyder's federal claims.

*So ordered.*

Footnotes

1   According to the tenant who performed massages, she was not a licensed masseuse, and although she also worked as a nurse, nothing she did on Snyder's property related to nursing. Snyder does not dispute this testimony.
2   Snyder's complaint also raised several state law claims, which are not at issue on this appeal.
3   Because the undisputed facts make clear that there was a rational basis for distinguishing between Snyder and the prior owner, we need not consider the effect of the statement issued by the Waltham district court, two and a half years after the end of the enforcement proceedings, that he had failed to comply with the variance.

End of Document                                         © 2014 Thomson Reuters. No claim to original U.S. Government Works.